[Cite as *Weaver v. Ohio Farmers Ins. Co.*, 2022-Ohio-2716.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| JOHN WEAVER | | C.A. No. 22CA0004-M |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| OHIO FARMERS INSURANCE COMPANY | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO CASE No. 21 CV 297 |
| Appellee | | |

DECISION AND JOURNAL ENTRY

Dated: August 8, 2022

HENSAL, Judge.

{¶1} John Weaver appeals from the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Mr. Weaver worked for Ohio Farmers Insurance Company, aka Westfield ("Westfield"), as a learning and development operations leader in the Westfield University department, a sub-department of the human resources ("HR")[1] department at Westfield that provided job-related learning and development to Westfield employees. Mr. Weaver was responsible for supervising six employees who wrote and developed materials for Westfield University.

---

[1] Subsequent references to the HR department include Westfield University.

**{¶3}** In the spring of 2019, Westfield reorganized the HR department in an effort to optimize the HR department's performance. This resulted in Mr. Weaver's peer, Connie Frey, being given additional responsibilities and becoming Mr. Weaver's supervisor. Lori Gabel, the HR talent engagement leader at Westfield, recommended that Ms. Frey be given the additional responsibilities. According to Ms. Gabel, Ms. Frey had better supervisory skills and more experience than Mr. Weaver, making her better suited for the role than Mr. Weaver. According to Chris Paterakis, the former chief HR officer at Westfield and ultimate decision-maker in giving Ms. Frey additional responsibilities, Ms. Frey was higher performing than Mr. Weaver, had more experience, and had better relationships with Westfield's business partners, making her better suited for the role. According to Ms. Frey, she did not consider the additional responsibilities as a promotion, and she did not receive an increase in pay. Aside from Ms. Frey becoming his supervisor, Mr. Weaver's job remained essentially the same after the reorganization of the HR department.

**{¶4}** In December 2019, Westfield informed Mr. Weaver that his job was being eliminated because Westfield decided to decentralize its employee training program, meaning individual departments at Westfield, not the HR department, would be in charge of providing training and development opportunities to employees. Mr. Weaver, along with one other male and six females, was terminated from Westfield effective January 2020. According to Mr. Weaver, Westfield terminated him because he is male. According to Westfield, it terminated Mr. Weaver because his position was eliminated from the company. Notably, according to Ms. Frey, Westfield also informed her in December 2019 that her role was being eliminated from Westfield. She remained with Westfield to assist with the transition to the decentralized training program, and her position was ultimately eliminated effective March 2021.

**{¶5}** After his termination, Mr. Weaver sued Westfield, asserting claims for age discrimination, sex discrimination, and discrimination based upon disparate impact. Westfield moved for summary judgment on Mr. Weaver's claims. Mr. Weaver opposed Westfield's motion. In doing so, Mr. Weaver "withdr[ew]" his claims for age discrimination and discrimination based upon disparate impact. The sole remaining claim, therefore, was sex discrimination under Revised Code Section 4112.02(A). Accordingly, this Court will limit its discussion of the summary-judgment arguments to those related to Mr. Weaver's claim of sex discrimination.

**{¶6}** In its motion for summary judgment, Westfield asserted that Mr. Paterakis (the former chief HR officer at Westfield), made the decision to reorganize the HR department in late 2018. Part of that reorganization involved assigning more responsibilities to Ms. Gabel, which, in turn, necessitated reassigning some of Ms. Gabel's responsibilities to Ms. Frey. Westfield asserted that Ms. Frey, as opposed to Mr. Weaver, was more experienced and a better candidate to take on these additional responsibilities. As previously noted, as a result of these changes, Ms. Frey went from being Mr. Weaver's peer to his supervisor.

**{¶7}** Westfield then asserted that, in the spring and summer of 2019, Westfield implemented measures to reduce expenses. This included reassigning some of the learning and development programming to the individual departments at Westfield, as opposed to being facilitated by the HR department. This ultimately resulted in the layoff of Mr. Weaver, one other male employee, and six female employees. Westfield asserted that the decision to layoff these employees was solely based upon Westfield's need to reduce expenses and was not based upon the sex of the individuals that were laid off. Westfield, therefore, asserted that: (1) Mr. Weaver could not show that Westfield is the unusual employer that discriminates against male employees; and (2) Mr. Weaver could not prove that Westfield lacked a legitimate, non-discriminatory reason

for its layoff decision. It, therefore, argued that it was entitled to judgment as a matter of law on Mr. Weaver's claim of sex discrimination.

{¶8} In support of its motion, Westfield relied upon the deposition testimony of Mr. Weaver, as well as affidavits from Mr. Paterakis, Ms. Gabel, and Amy Davin (another member of the HR department). This Court will briefly summarize each affidavit in turn.

{¶9} Mr. Paterakis averred that he was the former chief HR officer at Westfield, and that Ms. Gabel reported directly to him. He averred that, in late 2018, he decided to reorganize the HR department because of business needs. He averred that Ms. Gabel and Ms. Frey were given additional duties as a result of the reorganization, and that Ms. Frey became Mr. Weaver's supervisor. He averred that these changes became effective in January 2019, and that his decisions related to the reorganization of the HR department were not based on the sex of the employees. He averred that, after he was no longer employed with Westfield, he learned that Westfield decided to eliminate several positions in the HR department. He averred that these eliminations were not contemplated at the time of the reorganization in early 2019.

{¶10} In her affidavit, Ms. Gabel averred that she is the current HR talent engagement leader at Westfield. She averred that she recommended to Mr. Paterakis that Ms. Frey be given additional responsibilities during the reorganization of the HR department because she believed Ms. Frey was the best person for that role. She averred that the decision to give Ms. Frey more responsibilities was not based upon her sex.

{¶11} Ms. Gabel also averred that, in mid to late 2019, Westfield made the decision to cut expenses throughout the company. Consistent with that decision, Ms. Gabel averred that she decided to decentralize Westfield's training and development program, meaning that function would return to the individual departments, as opposed to being facilitated by the HR department.

As a result, she averred, she made the decision to layoff Mr. Weaver, as well as one other male and six females. She averred that her decision was not based upon the sex of the employees, and that it was not contemplated at the time of the reorganization in the spring and summer of 2019. Attached to Ms. Gabel's affidavit was an internal memorandum authored by Ms. Gabel and directed to Ms. Davin, dated November 26, 2019, wherein Ms. Gabel discussed the need to reduce expenses and decentralize the training and development program. That memorandum also indicated that eight positions within the HR department would be eliminated effective January 17, 2020. Mr. Weaver's position was listed among the positions being eliminated.

{¶12} In Ms. Davin's affidavit, she averred that she is currently the employee relations leader at Westfield. She averred that she was involved in the decision to layoff certain employees in late 2019. She averred that the entire team that was developing internal educational programs was laid off because that function was either outsourced or returned to the individual departments. She averred that Mr. Weaver, who was the leader of that team, was laid off because his role became unnecessary. She also averred that the decision to layoff those employees was not based upon their sex.

{¶13} Mr. Weaver opposed Westfield's motion for summary judgment. As previously noted, he "withdr[ew]" his claims for age discrimination and discrimination based upon disparate impact. His brief, therefore, solely addressed his claim of sex discrimination.

{¶14} Mr. Weaver argued that the circumstances surrounding Ms. Frey's promotion, as well as his subsequent termination, demonstrated that Westfield discriminated against him on the basis of his sex. He argued that there was no competitive interview process for Ms. Frey's new position, that Mr. Paterakis essentially rubber-stamped Ms. Gabel's decision to promote Ms. Frey, that he was better suited for that position, and that Westfield promoted Ms. Frey so that it could

later avoid firing her during the layoffs. He also argued that Westfield's diversity, equity, and inclusion ("DEI") policy demonstrated that Westfield engaged in sex discrimination by emphasizing the need to increase the number of women and minorities in leadership roles, and by tracking its progress towards its diversity goals by measuring "[h]eadcount[,]" which – he argued – was tantamount to a quota. He further argued that, after his termination, Ms. Frey essentially assumed his prior position and that, once Ms. Frey left Westfield, Westfield hired an unqualified and inexperienced female for a position that was essentially his former job. Mr. Weaver, therefore, argued that Westfield's reliance upon Ms. Frey's alleged superior qualifications and its reduction-in-force to justify his termination was merely a pretext for sex discrimination.

{¶15} In support of his brief in opposition to Westfield's motion for summary judgment, Mr. Weaver relied upon the deposition testimony of Ms. Gabel, Ms. Frey, and Mr. Paterakis, as well as various other documents, including Westfield's job descriptions and job postings, and DEI documents from Westfield that he obtained through a "legally protected informer[.]" After filing his brief in opposition, Mr. Weaver filed a motion to compel and for sanctions against Westfield, arguing that Westfield had failed to produce its DEI documentation to him during discovery. That motion remained pending at the time the trial court issued its summary-judgment ruling.

{¶16} In its reply in support of its motion for summary judgment, Westfield reiterated that Ms. Frey was given additional responsibilities because she was more qualified than Mr. Weaver. Westfield also argued that the fact that Ms. Frey was later terminated as a result of the changes in the HR department undermined Mr. Weaver's claim that Westfield's actions were based upon Mr. Weaver's sex. Westfield further argued that Ms. Frey and Mr. Weaver were not similarly situated employees at the time of Mr. Weaver's termination, which was fatal to his claim of sex discrimination.

{¶17} Westfield also argued that its decision to layoff certain employees, the majority of whom were female, had nothing to do with its DEI efforts. It argued that the DEI documents Mr. Weaver cited show only that Westfield is committed to considering a more diverse pool of candidates for available positions. In summary, Westfield argued that its decisions were legitimate, non-discriminatory business decisions, and were not based upon Mr. Weaver's sex.

{¶18} The trial court granted summary judgment in favor of Westfield. In the same journal entry, the trial court also denied all motions that were not specifically granted. Because it was not specifically granted, Mr. Weaver's motion to compel and for sanctions against Westfield regarding Westfield's alleged failure to produce its DEI documentation was denied. Mr. Weaver now appeals, raising two assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED TO THE MATERIAL PREJUDICE OF THE APPELLANT JOHN WEAVER WHEN IT GRANTED THE APPELLEE OHIO FARMER'S INSURANCE COMPANY AKA "WESTFIELD" MOTION FOR SUMMARY JUDGMENT FINDING THERE WAS NO GENUINE ISSUE OF FACT TO BE FOUND IN THE RECORD TO SUPPORT THE PLAINTIFF'S RC 4112.02 SEX DISCRIMINATION CLAIMS.

{¶19} In his first assignment of error, Mr. Weaver argues that the trial court erred by granting Westfield's motion for summary judgment. For the reasons that follow, this Court disagrees.

{¶20} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civil Rule 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence

most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶21} The party moving for summary judgment bears the initial burden of demonstrating the absence of genuine issues of material facts concerning the essential elements of the non-moving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civil Rule 56(C). *Id.* at 292-293. If the moving party satisfies this burden, then the non-moving party has the reciprocal burden to demonstrate a genuine issue for trial remains. *Id.* at 293. The non-moving party may not rest upon the mere allegations or denials in her pleadings, but must point to or submit evidence of the type specified in Civil Rule 56(C). *Id.*; Civ.R. 56(E). We now turn to the law regarding claims of discrimination.

{¶22} Section 4112.02(A) prohibits "any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." This Court has described the framework for analyzing claims of discrimination, including claims of reverse sex discrimination, as follows:

> "Ohio courts analyze discrimination claims which are based on indirect evidence under the framework provided by *McDonnell Douglas Corp. v. Green* * * *. Generally under *McDonnell Douglas*, "[t]o establish a prima facie case of discrimination, a plaintiff must show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) replacement by a non-protected person." * * * However, "[a] plaintiff may also satisfy the fourth prong of a prima facie case showing by adducing evidence that [ ]he 'was [ ] treated differently than similarly situated non-protected employees.'" * * * However, in cases alleging reverse discrimination, * * * the *McDonnell Douglas* test has been modified so that, "in order to establish the first step, a plaintiff must demonstrate background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." * * *.

*Jones v. MTD Consumer Group, Inc.*, 9th Dist. Medina No. 13CA0093-M, 2015-Ohio-1878, ¶ 27.

{¶23} Once a plaintiff establishes a prima facie case of discrimination, a rebuttable presumption of discrimination is created, "and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action." *Id.*, quoting *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir.2008). "If the defendant satisfies this burden, the plaintiff must then prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.*, quoting *Russell* at 604. "To establish such pretext, a plaintiff must show either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [his] discharge, or (3) that they were insufficient to motivate discharge." *Id.*, quoting *Russell* at 604.

{¶24} "To overcome summary judgment on the issue of pretext, the employee cannot simply deny the facts underlying the employer's decision, but instead must put forth 'evidence creating a material dispute as to the employer's honest belief in its proffered legitimate, nondiscriminatory reason.'" *Lehmier v. W. Res. Chem. Corp.*, 9th Dist. Summit No. 28776, 2018-Ohio-3351, ¶ 22, quoting *Wigglesworth v. Mettler Toledo Internatl., Inc.*, 10th Dist. Franklin No. 09AP-411, 2010-Ohio-1019, ¶ 19. "To exhibit an honest belief, 'the employer must establish its reasonable reliance on particularized facts that were before it at the time it made the adverse employment decision.'" *Id.*, quoting *Dunn v. GOJO Industries*, 9th Dist. Summit No. 28392, 2017-Ohio-7230, ¶ 18. "Mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.*, quoting *Dunnigan v. City of Lorain*, 9th Dist. Lorain No. 02CA008010, 2002-Ohio-5548, ¶ 14.

{¶25} Like his brief in opposition to Westfield's motion for summary judgment, Mr. Weaver's appellate brief advances several arguments as to how his termination from Westfield

was based upon sex discrimination as opposed to a legitimate, non-discriminatory business decision. He again argues that the circumstances surrounding Ms. Frey's promotion in early 2019, including the lack of a competitive interview process for that position and his belief that he was more qualified for that position, demonstrate that Westfield discriminated against him on the basis of his sex. Mr. Weaver continues to argue that Westfield promoted Ms. Frey in early 2019 in order to insulate her from being fired during the layoffs later that year, that Ms. Frey essentially assumed his former position after his termination despite the fact that he was more qualified to continue in that position, that – after Ms. Frey left Westfield – Westfield filled a role that was essentially his former position with an inexperienced, unqualified female, and that – in addition to the foregoing – Westfield's DEI policy demonstrates that Westfield discriminated against him on the basis of his sex.

{¶26} In response, Westfield argues that Mr. Paterakis, a male, made the decision to reorganize the HR department in late 2018, which eventually led to Ms. Frey assuming additional responsibilities. Westfield argues that Ms. Frey, not Mr. Weaver, was more qualified for that position. Westfield also argues that its termination of six females at the same time it terminated Mr. Weaver and one other male shows that its decision was not based upon Mr. Weaver's sex. It further argues that the fact that Ms. Frey assumed some of Mr. Weaver's former job duties after his termination in order to assist Westfield with its transition to a decentralized training program does not show that it discriminated against Mr. Weaver on the basis of his sex.

{¶27} In his reply in support of his appellate brief, Mr. Weaver argues, in part, that, although Mr. Paterakis was ultimately responsible for promoting Ms. Frey, he was simply acting as Ms. Gabel's "cat's paw." Mr. Weaver also points to Ms. Gabel's deposition testimony that he "did not notice before in MSJ briefing but [it] is in the record" related to Ms. Frey's job duties.

Westfield has moved this Court to strike or disregard Mr. Weaver's arguments in that regard, arguing that they were not raised in the trial court and/or in his initial appellate brief. This Court deferred its ruling on Westfield's motion, noting that this Court would determine that issue during the final disposition of the appeal. Because the arguments raised in Mr. Weaver's reply brief in support of his appellate brief have no bearing on this Court's decision, we deny Westfield's motion to strike or disregard Mr. Weaver's arguments as moot.

{¶28} Having reviewed the record, including the depositions, affidavits, and exhibits included in the summary-judgment briefing, this Court concludes that the trial court did not err by granting Westfield's motion for summary judgment. Assuming without deciding that Mr. Weaver established a prima facie case of sex discrimination, this Court concludes that Westfield met its initial summary-judgment burden, and that it articulated a legitimate, nondiscriminatory reason for terminating Mr. Weaver's employment. Mr. Weaver, therefore, bore the burden of demonstrating that a genuine issue of material fact remained regarding whether Westfield's proffered reason for his termination was merely a pretext for sex discrimination. Having reviewed the record, this Court concludes that he failed to do so.

{¶29} Westfield presented evidence indicating that Mr. Paterakis made the decision to reorganize the HR department, which led to Ms. Frey being given additional responsibilities. Both Mr. Paterakis and Ms. Gabel testified that Ms. Frey was the superior candidate for that position. According to Ms. Gabel, Ms. Frey had better supervisory skills and more experience than Mr. Weaver, making her better suited for the role than Mr. Weaver. According to Mr. Paterakis, Ms. Frey was higher performing than Mr. Weaver, had more experience, and had better relationships with Westfield's business partners, making her better suited for the role. Aside from his assertions that he was more qualified than Ms. Frey and that he should have been given the opportunity to

apply for her position, Mr. Weaver did not present any evidence that created a genuine issue of material fact as to whether Westfield's decision in this regard was anything other than a legitimate, non-discriminatory business decision. The fact that Westfield has a DEI policy that includes a goal of increasing the number of women and minorities in leadership positions does alter this conclusion.

{¶30} Westfield also presented evidence indicating that there was a decision to cut expenses company-wide, and that – consistent with this decision – it decided to decentralize its learning and development program. As a result, Mr. Weaver and his entire team (who wrote and developed materials for Westfield's learning and development program) were terminated. In total, six women and two men (including Mr. Weaver) were terminated. Mr. Weaver has gone to great lengths to try to establish that Westfield promoted Ms. Frey in early 2019 so that it could discriminate against him on the basis of his sex and insulate Ms. Frey from the layoffs later that year. Yet, there is no evidence, aside from Mr. Weaver's own assertions, to support his argument in that regard. According to Mr. Paterakis and Ms. Gabel, the reorganization of the HR department in the spring of 2019 was unrelated to the layoff decisions made in December 2019. Mr. Weaver presented no evidence to rebut that testimony.

{¶31} Additionally, Mr. Weaver relies on evidence, including job descriptions and job postings created after his termination, to support his claims that Ms. Frey assumed his role and that – after Ms. Frey left Westfield – an unqualified, inexperienced female assumed his prior role. Yet he fails to acknowledge the testimony from Ms. Gabel and Ms. Frey highlighting the differences between his former position and Ms. Frey's position, which – as previously noted – was also eliminated from Westfield effective March 2021. He argues that he could – and should – have continued his employment at Westfield without acknowledging that the team he supervised was

also laid off, or the testimony indicating that the training and development program no longer operates as it previously did. Despite his arguments to the contrary, this Court concludes that Mr. Weaver's reliance on job descriptions and job postings created after his termination did not establish a genuine issue of material fact regarding whether Westfield's proffered reason for his termination was a pretext for sex discrimination.

{¶32} In conclusion, even assuming Mr. Weaver established a prima facie case of sex discrimination, he failed to present evidence that created a genuine issue of material fact as to whether Westfield's proffered reason for his termination was a pretext for sex discrimination. More specifically, he failed to present evidence that created a genuine issue of material fact as to whether Westfield's proffered reason had no basis in fact, did not motivate his termination, or that it was insufficient to motivate his termination. *Jones*, 2015-Ohio-1878, at ¶ 27, quoting *Russell*, 537 F.3d at 604. His arguments amounted to mere conjecture, which is an insufficient basis for the denial of summary judgment. *Lehmier*, 2018-Ohio-3351, at ¶ 22. The trial court, therefore, did not err when it granted summary judgment in favor of Westfield. Mr. Weaver's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED TO THE MATERIAL PREJUDICE OF THE APPELLANT JOHN WEAVER WHEN IT DENIED HIS MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS AGAINST APPELLEE OHIO FARMER'S INSURANCE COMPANY AKA "WESTFIELD" GIVEN SAID MOTION SOUGHT TO OBTAIN INFORMATION RELATED TO THE DEFENDANT EMPLOYER TERMINATING THE EMPLOYMENT OF WHITE MALE MANAGERS UNDER A COMPANY AFFIRMATIVE ACTION POLICY.

{¶33} In his second assignment of error, Mr. Weaver argues that the trial court erred by denying his motion to compel and for sanctions against Westfield. As explained below, this Court

declines to address the merits of Mr. Weaver's argument because he has not preserved this issue for appeal.

{¶34} "When a trial court enters summary judgment without expressly determining a pending motion, the motion impliedly is denied." *Rhododendron Holdings, LLC v. Harris*, 2d Dist. Montgomery No. 28814, 2021-Ohio-147, ¶ 16, quoting *Polivka v. Cox*, 10th Dist. Franklin No. 02AP-1364, 2003-Ohio-4371, ¶ 23. "Where the pending motion is a motion to compel, the party opposing summary judgment must seek a delay of the trial court's ruling pursuant to Civ.R. 56(F) or otherwise include in their response to the motion for summary judgment some allegation of prejudice as a result of the trial court's failure to rule." *Id.* quoting *Polivka* at ¶ 23. "If a party fails to file a motion under Civ.R. 56(F), or does not, in their response to a summary judgment motion, show prejudice resulting from failure to receive the discovery requested, that party fails to preserve the issue for appeal." *Tripp v. Beverly Ent.-Ohio, Inc.*, 9th Dist. Summit No. 21506, 2003-Ohio-6821, ¶ 69; *Koballa v. Twinsburg Youth Softball League*, 9th Dist. Summit No. 23100, 2006-Ohio-4872, ¶ 42 (same).

{¶35} Here, the trial court denied all pending motions that were not specifically granted at the time it granted summary judgment in favor of Westfield. This necessarily included Mr. Weaver's motion to compel and for sanctions related to Westfield's alleged failure to produce its DEI documentation. Mr. Weaver, however, has not identified anywhere in the record where he sought a delay in the trial court's ruling on Westfield's motion for summary judgment, or otherwise alleged prejudice as a result of the trial court's consideration of Westfield's motion for summary judgment without first resolving his motion to compel. *Harris* at ¶ 16. He, therefore, has not preserved this issue for appeal. *Tripp* at ¶ 69; *Koballa* at ¶ 42. Accordingly, Mr. Weaver's second assignment of error is overruled.

III.

{¶36} Mr. Weaver's assignments of error are overruled. Westfield's motion to strike or disregard is denied as moot. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

MICHAEL T. CONWAY, Attorney at Law, for Appellant.

PAUL L. JACKSON and KAREN D. ADINOLFI, Attorneys at Law, for Appellee.