DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiff-Appellant Julieann Fox appeals from the judgment of the Lorain County Court of Common Pleas which granted summary judgment against Fox on each of her claims. We affirm.
 I {¶ 2} Fox began her employment with Defendant-Appellee Lorain County Metro Parks ("the Parks") in 2001. On June 14, 2004, Fox submitted a letter of resignation to the Parks. Fox later attempted to revoke her resignation, but the Parks declined to accept her revocation. *Page 2 
 {¶ 3} On June 24, 2004, Fox filed suit against the Parks and numerous individuals in their official and individual capacities. In addition to the Parks, Fox named James D. Martin, Patricia McCaslin, Sherrill McCloda, Stanley Pijor, Kirk Stewart, Paul Hruby, and Dan Rosencrans (collectively "Appellees") as defendants. Martin is the Director of the Parks, while McCaslin is the Operations Supervisor. McCloda, Pijor, and Stewart form the Board of Commissioners for the Parks. Hruby was Fox's supervisor at the time of her resignation, while Rosencrans was one of Fox's former supervisors.
 {¶ 4} In her complaint, Fox alleged that Appellees had engaged in gender discrimination and permitted a hostile work environment which resulted in her constructive discharge. Through two motions, all of the defendants moved for summary judgment. Fox responded in opposition and the defendants replied to her opposition. On March 14, 2007, the trial court granted summary judgment against Fox on each of her claims. Fox timely appealed the trial court's decision, raising nine assignments of error for review.
 II Assignment of Error Number One "THE TRIAL COURT ERRED IN GRANTING APPELLEES' SHERRILL M. MCCLODA, STANLEY G. PIJOR AND KIRK E. STEWART'S MOTION FOR SUMMARY JUDGMENT AS THERE ARE SEVERAL ISSUES OF FACT UPON WHICH REASONABLE MINDS COULD DIFFER WHICH SHOULD PRECLUDE THE GRANTING OF SUMMARY JUDGMENT UNDER OHIO CIVIL RULE 56, INCLUDING BUT NOT LIMITED TO THE FACT THAT THERE WAS AN OPEN DOOR *Page 3 
POLICY AS TO DISCRIMINATION AND ALL FINANCIAL AND/OR BUDGETARY CONCERNS WERE CONTROLLED BY THE BOARD OF PARK COMMISSIONERS."
 Assignment of Error Number Two "THE TRIAL COURT ERRED AS A MATTER OF LAW IN PLACING UPON THE APPELLANT AN EXCESSIVE BURDEN IN ESTABLISHING HER PRIMA FACIE CASE AND SUBSEQUENT REFUTATION OF APPELLEES' PRETEXTUAL REASONS FOR THEIR ACTS OR CONDUCT."
 Assignment of Error Number Three "THE TRIAL COURT ABUSED ITS DISCRETION IN INCORRECTLY DERIVING THAT APPELLANT'S DEPRIVATION OF ASSISTANT MANAGER WAS A LATERAL MOVE WHEN, IN FACT, IT WAS A PROMOTION WITH SALARY INCREASE FROM HER POSITION AS RANGER."
 Assignment of Error Number Four "THE TRIAL COURT ERRED IN NOT CONSIDERING THAT THE MALE RANGERS WERE TREATED DIFFERENTLY THAN THE APPELLANT AS TO HOW THEY WERE DISCIPLINED BY APPELLEE LORAIN COUNTY METRO PARKS."
 Assignment of Error Number Five "THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS INTERPRETATION OF CONSTRUCTION (sic) DISCHARGE."
 Assignment of Error Number Six "THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS INTERPRETATION OF DISCRIMINATION DUE TO GENDER IN VIOLATION OF [R.C.] 4112.02"
 Assignment of Error Number Seven "THE TRIAL COURT ERRED IN NOT TAKING INTO CONSIDERATION THAT APPELLEE LORAIN COUNTY *Page 4 
METRO PARKS, ITS AGENTS AND/OR EMPLOYEES, JAMES MARTIN, AKA DAN MARTIN, THE DIRECTOR HAD PREVIOUSLY PERMITTED MALE EMPLOYEES TO REVOKE HIS RESIGNATION AND PROHIBITING APPELLANT FROM REVOKING HER RESIGNATION WHILE SHE WAS STILL ON THE PREMISES." (Sic.)
 Assignment of Error Number Eight "THE TRIAL COURT ERRED IN GRANTING APPELLEE LORAIN COUNTY METRO PARKS AND THE INDIVIDUAL APPELLEES JAMES, AKA DAN MARTIN, PATRICIA MCCASLIN, PAUL HRUBY AND DAN ROSENCRANS' MOTION FOR SUMMARY JUDGMENT."
 {¶ 5} Upon reviewing her brief, it is unclear which causes of action are challenged in Fox's respective assignments of error. For ease of analysis, therefore, we have consolidated her first eight assignments of error. In those assignments of error, Fox alleges that the trial court erred in granting summary judgment against her on each of her claims. We disagree.
Standard of Review {¶ 6} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948. *Page 5 
 {¶ 7} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
Gender Discrimination {¶ 9} R.C. 4112.02(A) prohibits discrimination because of sex "with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio courts apply federal case law interpreting Title VII of the Civil Rights Act of 1964 to claims arising *Page 6 
under R.C. Chapter 4112 to the extent that the terms of the statutes are consistent. See Genaro v. Cent. Transport, Inc. (1999),84 Ohio St.3d 293, 298, citing Plumbers Steamfitters Joint Apprenticeship Commit. v.Ohio Civil Rights Commn. (1981), 66 Ohio St.2d 192, 196.
 {¶ 10} A plaintiff alleging sex discrimination bears the burden of setting forth a prima facie case of discrimination by either direct or circumstantial evidence. Chang v. Univ. of Toledo (N.D.Ohio, 2007), 480 F.Supp.2d 1009, 1013, citing McDonnell Douglas Corp. v. Green (1973),411 U.S. 792, 802. In order to establish a prima facie case of sex discrimination using indirect evidence a plaintiff must demonstrate (1) that she is a member of a protected class; (2) that she was qualified for the position in question; (3) that she suffered an adverse employment action despite her qualifications; and (4) that she was treated less favorably than a similarly situated individual outside the protected class. Barnett v. Dept. of Veterans Affairs (C.A.6, 1998),153 F.3d 338, 341. If the plaintiff successfully establishes a prima facie case, the employer must articulate a legitimate, nondiscriminatory justification for the employment action. Texas Dept. of CommunityAffairs v. Burdine (1981), 450 U.S. 248, 253. The plaintiff may then prove, by a preponderance of the evidence, that the justification articulated by the employer is a pretext for discrimination. Id. At all times, however, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff. Id. *Page 7 
 {¶ 11} If a plaintiff produces direct evidence of discrimination, she need not satisfy the four-part test for establishing a prima facie case using indirect evidence. Rowan v. Lockhead Martin Energy Systems,Inc. (C.A.6, 2004), 360 F.3d 544, 548. Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v.Schering-Plough Healthcare Products Sales Corp. (C.A.6, 1999),176 F.3d 921, 926. Explicit statements of discriminatory intent constitute such direct evidence of discrimination. See Johnson v. Univ. ofCincinnati (C.A.6, 2000), 215 F.3d 561, 577, fn7; Wittman v. Akron, 9th Dist. No. 21375, 2003-Ohio-5617, at ¶ 16. Such statements are distinguished from harmless, stray remarks by the nexus between the improper motive and the decision making process. Accordingly, courts consider: (1) whether the comments were made by a decision-maker; (2) whether the comments were related to the decision making process; (3) whether they were more than vague, isolated, or ambiguous; and (4) whether they were proximate in time to the act of alleged discrimination. See Peters v. Lincoln Elec. Co. (C.A.6, 2002),285 F.3d 456, 477-78, citing Cooley v. Carmike Cinemas, Inc. (C.A.6, 1994),25 F.3d 1325.
 {¶ 12} In reviewing Fox's brief, it is not possible to determine under which theory she seeks reversal. Facts and law are contained within each of her assignments of error, but those assignments of error do not form cohesive arguments. Consequently, we review what it appears that Fox has argued. *Page 8 
1. Failure to Promote Claims {¶ 13} Fox twice interviewed for assistant manager positions with the Parks system. She asserted below that gender discrimination resulted in her receiving neither position. We disagree.
 {¶ 14} Fox first applied for an assistant manager position at North Coast Inland Trail. During her deposition, Fox admitted that no assistant manager was hired at that time. McCaslin explained that none of the candidates interviewed were sufficiently prepared to become assistant managers at that time. Consequently, Fox did not provide evidence that another person outside her protected class was treated more favorably. Fox, therefore, did not state a prima facie case of gender discrimination as it relates to this position.
 {¶ 15} Fox also applied for the assistant manager position at Black River Reservation. The Black River position was ultimately filled by Brian Holmes. Assuming arguendo that Fox met her prima facie burden, Appellees met their reciprocal burden by providing a legitimate, nondiscriminatory justification for their decision. To meet this burden, Appellees relied upon McCaslin's affidavit. In that affidavit, McCaslin explained that Holmes had a better educational background, more general work experience, and more managerial experience than Fox. McCaslin asserted that Holmes was hired because he was the more qualified candidate. The burden then shifted to Fox to supply evidence that Appellees' stated reason was pretextual. Fox provided no evidence to meet this burden, and *Page 9 
consequently, summary judgment as it relates to the Black River position was appropriate.
2. Lateral Transfer {¶ 16} Fox also asserted that Appellees committed gender discrimination when they transferred her from Mill Hollow to Black River when Kevin Bartley became the assistant manager at Mill Hollow. Fox's assertions suffer from numerous flaws. Assuming arguendo that this transfer was an adverse employment action, Fox has not identified any similarly situated person who was treated differently than she. To the extent that she asserted that Bartley was treated differently, he cannot be said to be similarly situated. At the time of the transfer, Fox was a ranger and Bartley was an assistant manager.
 {¶ 17} Moreover, even if this Court were to assume that Fox had met her prima facie case, Appellees supplied evidence of a legitimate, nondiscriminatory reason for transferring Fox. Fox admitted to previously having been in a personal relationship with Bartley. In her affidavit, McCaslin asserted that Fox was transferred to Black River for two reasons. First, Fox had requested more law enforcement opportunities and Black River provided these opportunities. Second, Bartley would have been Fox's supervisor if she had not been transferred. McCaslin stated that Fox was transferred to avoid the possibility of a sexual harassment suit emerging due to Fox's prior relationship with Bartley. After Appellees provided this legitimate reason, Fox offered no evidence that it was *Page 10 
pretextual. The trial court, therefore, did not err in granting summary judgment as it related to Fox's lateral transfer.
3. General claim of disparate treatment {¶ 18} Fox's remaining arguments appear to be a claim that she was disciplined more severely than male rangers for similar offenses. We find no merit in Fox's contentions.
 {¶ 19} Fox appears to rely upon her one day suspension and Appellee's refusal to accept Fox's revocation of her resignation to support her claim that she was disciplined more severely. We address these claims in turn.
 {¶ 20} With respect to Appellees' refusal to accept Fox's revocation of her resignation, Fox has not identified any similarly situated individual. In support of her case, Fox asserted that on a prior occasion a male employee was permitted to revoke his resignation. Fox, however, did not identify any of the circumstances surrounding this resignation. Moreover, Appellees presented evidence that this revocation had occurred prior to amendments in the relevant collective bargaining agreement ("CBA"). On the date that Fox attempted to revoke her resignation, the CBA provided as follows:
 "Employees who give written notice to voluntarily resign their employment with LCMPD will have no right to rescind the resignation. If an employee wishes to rescind an accepted resignation, re-employment will be at the sole discretion of the LCMPD." *Page 11 
Based upon the above facts, we find that Fox failed to identify a similarly situated person who was treated more favorably. Consequently, the trial court properly granted summary judgment as it relates to the refusal to accept Fox's revocation of her resignation.
 {¶ 21} Fox's claim that other male rangers were disciplined less severely than she also lacks merit. In support of her claim, Fox relied upon her own affidavit. In that affidavit, Fox alleged that male rangers were not disciplined for uniform violations in the same manner that she was disciplined. Fox also asserted that male rangers were not disciplined for violating the rules regarding their time logs. We again find that Fox failed to identify any similarly situated individuals.
 {¶ 22} Fox began her employment with Appellees on May 21, 2001. On September 29, 2003, Fox was informed by her supervisor Hruby through a "documentation of review" (the Parks informal mechanism that was utilized prior to formal disciplinary measures) that she had recorded hours on her time card that she had not worked. On February 18, 2004, Fox received a verbal reprimand for failing to properly report that she would miss one hour of work and omitting the full reason that she was late to work. Specifically, Fox told her employer that she was having car trouble, but did not reveal that she also went to breakfast before reporting to work. On April 6, 2004, Fox was given a one day suspension for again reporting on her time card that she had worked hours for which she had not been present and for arriving at work not in uniform and ready to work. Appellees *Page 12 
also investigated two further incidents in which Fox misrepresented the hours she worked. Due to their investigation, Appellees believed that Fox had falsified her hours on her time card for May 20, 2004 and June 2, 2004. Prior to the Parks imposing discipline for these violations, Fox resigned.
 {¶ 23} In the trial court, Fox did not identify any male ranger that was similarly situated and treated more favorably. During her deposition, Fox identified numerous male rangers who were permitted to arrive at work not in uniform and who were not disciplined. As noted above, Fox was never disciplined solely for not being in uniform. Rather, her discipline was imposed for not arriving to work on time, falsifying her time logs, and not being in uniform when her shift was scheduled to start. Consequently, the male rangers with whom Fox seeks to compare herself are not similarly situated persons.
 {¶ 24} Fox also argued that other rangers and assistant managers were not disciplined for failing to turn in time logs. Similar to our above analysis, none of the individuals identified by Fox can be described as similarly situated. Specifically, Fox asserts that a former assistant manager, Dave Cox, failed to submit 13 time logs but still did not receive a suspension. Unlike Fox, however, Cox failed to timely complete his logs. Cox did not misrepresent the hours he had worked. Consequently, Cox is not a similarly situated person. *Page 13 
 {¶ 25} Based upon our review of Fox's claims, she failed in her burden with respect to each of her claims of gender discrimination. The trial court, therefore, did not err in granting Appellees' motions for summary judgment on that claim.
Constructive Discharge {¶ 26} The Sixth Circuit has established the standards by which Fox might prove her constructive discharge claim based on sexual harassment.
 "A finding of constructive discharge in this circuit requires an inquiry into both the objective feelings of the employee and the intent of the employer. . . . This court has . . . held that `proof of discrimination alone is not a sufficient predicate for a finding of constructive discharge, there must be other aggravating factors.' We have also required some inquiry into the employer's intent and the reasonably foreseeable impact of its conduct on the employee. . . . Thus it would appear that the courts have been trying to create a two pronged test whereby the feelings of the reasonable employee would not be enough to show discharge without at least some foreseeability on the part of the employer." (Alterations sic.) Wheeler v. The Southland Corp. (C.A.6, 1989), 875 F.2d 1246, 1249.
The Wheeler court continued that
 "the constructive discharge issue depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee. This court has also endorsed the well recognized rule in labor relations that a man is held to intend the foreseeable consequences of his conduct. Therefore, an employee can establish a constructive discharge claim by showing that a reasonable employer would have foreseen that a reasonable employee (or this employee, if facts peculiar to her are known) would feel constructively discharged." (Internal citations omitted.) Id.
 {¶ 27} Accordingly, to prevail on her claim of constructive discharge premised on a hostile working environment based on sexual harassment, Fox must *Page 14 
demonstrate a hostile working environment and "show that a reasonable employer would have foreseen that she would resign, given the sexual harassment she faced." Id. In order to determine whether an environment is sufficiently hostile to warrant a finding of sexual harassment this Court examines the totality of the circumstances including:
 "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." Harris v. Forklift Systems (1993), 510 U.S. 17, 23.
The standards for judging hostility are demanding such that "the ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing" will not constitute a hostile work environment. Faragher v. City of BocaRaton (1998), 524 U.S. 775, 788.
 {¶ 28} Like Fox's other arguments, it is difficult to determine which facts Fox believes support her claim of constructive discharge. Fox seems to focus on several statements which were made over the course of her three-year employment. Fox also focuses upon an event in which she was measured for a bulletproof vest. We find that Fox failed to demonstrate a hostile working environment from which Appellees should have foreseen that she would resign. *Page 15 
 {¶ 29} Fox testified during her deposition that during one of her interviews for an assistant manager position, Hruby privately asked her, "What the f**k is wrong with you?" Fox also testified that on another occasion that Hruby had told her that she "needed to cut her bangs." Additionally, Fox stated that she had been told that her "ass was a mess" and "you look like shit today." Fox did not testify that these comments were made regularly, but rather identified isolated events that occurred during the entire time she worked for the Parks. This type of sporadic use of profanity cannot form the basis of a hostile work environment. See Faragher, supra.
 {¶ 30} Fox also asserts that she was made uncomfortable when her male supervisor, Rosencrans, measured her for a bulletproof vest. During this time period, Rosencrans asked Fox her bust size and measured her inseam while other male rangers were in the office. In response to concerns voiced by Fox, Rosencrans allowed her to write down her bust size rather than say it aloud. Moreover, Fox does not dispute that these measurements were required in order to properly fit her for the vest. We cannot conclude that this isolated incident, which Fox admits was required to be performed to accomplish a legitimate work place activity, contributed to a hostile working environment.
 {¶ 31} Finally, Fox's admissions undermine her claim that she was subjected to severe sexual harassment which forced her resignation. In her resignation, Fox indicated that she was leaving her employment because she had *Page 16 
found another job. Only after giving notice of her resignation did Fox file a grievance asserting that she had been sexually harassed for the months leading up to her resignation. Moreover, during her deposition, Fox admitted that her grievance was not about sexual harassment, but about what she perceived to be general harassment. Fox explained that this harassment consisted of Hruby only speaking to her about work assignments and ignoring her on many occasions. This type of activity is insufficient to support Fox's claim of constructive discharge.
 {¶ 32} We find no error in the trial court's conclusion that no genuine issue of material fact remains on Fox's claim for constructive discharge. As such, the trial court did not err in granting Appellees' motions for summary judgment.
 {¶ 33} Fox's first eight assignments of error lack merit.
 Assignment of Error Number Nine "* * * THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO STRIKE AUTHORITIES PURSUANT TO O.CIV.R. 12(F)."
 {¶ 34} In her final assignment of error, Fox contends that the trial court erred in denying her motion to strike the additional authority supplied by Appellees in support of their summary judgment motion. In Fox's first eight assignments of error, we concluded that the trial court properly determined as a matter of law that Fox's claims must fail. Neither our review nor the trial court's review is in any way dependent on the one authority referenced in the *Page 17 
supplemental authority. Moreover, that filing contains no legal argument. Consequently, Fox cannot demonstrate any prejudice from the trial court's denial of her motion to strike. Fox's ninth assignment of error lacks merit.
 III {¶ 35} Fox's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 18 
Costs taxed to Appellant.
 CARR, J DICKINSON, J. CONCUR. *Page 1