[Cite as *Lehmier v. W. Res. Chem. Corp.*, 2018-Ohio-3351.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ANNMARIE LEHMIER

     Appellant

     v.

WESTERN RESERVE CHEMICAL
CORPORATION, et al.

     Appellees

C.A. No.     28776

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2016-09-3832

DECISION AND JOURNAL ENTRY

Dated: August 22, 2018

CALLAHAN, Judge.

{¶1} Appellant, Annmarie Lehmier, appeals from the judgment of the Summit County Common Pleas Court granting summary judgment to Appellees, Western Reserve Chemical Corporation, Ronald Anderson, and Tony Hall (collectively "Western Reserve Chemical"). For the reasons set forth below, this Court affirms in part and reverses in part.

I.

{¶2} Western Reserve Chemical Corporation ("the Company") manufactures and supplies chemicals to the rubber and polymer industries. The Company had four account managers: Mr. Anderson, who was also the president of the Company; Mr. Hall, who was also the vice-president of business development; Ms. Lehmier; and D.K. Mr. Hall was Ms. Lehmier's direct supervisor. Ms. Lehmier was the only female account manager. The Company hired D.R., a male, to replace Ms. Lehmier after her termination.

{¶3}   Ms. Lehmier was hired in March 2015 as an account manager for the Company. Ms. Lehmier's job duties included marketing the Company's products to existing customers and developing new customers in her assigned territories, which included Ohio, Michigan, Wisconsin, Minnesota, New York, and Vermont.  Account managers, including Ms. Lehmier, were required to travel to meet with existing and new customers.

{¶4}   During her employment, Ms. Lehmier perceived that she was subject to multiple instances of discrimination based upon her gender.  For instance, Ms. Lehmier was assigned to an office away from the other account managers, she did not receive a company car on her first day of employment, she did not receive adequate training and mentoring from Mr. Hall, she was assigned a less productive customer base, she was required to work at a booth instead of networking throughout the area at a conference, colleagues outside of the Company were discouraged from helping her, Mr. Hall was not supportive of her efforts and progress with customers, and Mr. Hall sabotaged her sales by denying her access to product in stock. Additionally, Ms. Lehmier believed that the travel policy implemented in January 2016 was discriminatory because only she was required to comply with the policy and the policy required her to use hotels that were "unsafe" and "dumps," thereby interfering with her ability to perform her job duties.

{¶5}   In mid-January, Mr. Hall instructed Ms. Lehmier and her co-worker, D.K., to prepare a presentation regarding their respective sales, "a list of prospects[,] and a plan of action for sales and sales growth heading into 2016."  The purpose of the presentation was to gather information from the account managers who were in the field regarding what business "was in the pipeline" in order to budget and prepare for the 2016 fiscal year.  The presentation also

allowed Mr. Hall and Mr. Anderson to assess whether Ms. Lehmier had plans to travel to develop new customers.

{¶6} In late January 2016, Ms. Lehmier drafted an email to Mr. Anderson in which she cited her perceived inability to meet her job duties and travel requirements and requested an inside sales position. However, Ms. Lehmier never sent the email because she "decided to try and stick it out."

{¶7} Instead of sending the email, Ms. Lehmier met with Mr. Anderson on Thursday, February 11, 2016, to discuss Mr. Hall's conduct toward her and her job performance. During the conversation, Mr. Anderson made two comments in response to Ms. Lehmier's complaints and her performance concerns: he suggested she "'grow a pair'" and "'wear shorter skirts because everyone likes to chase skirts.'"

{¶8} The next day, Ms. Lehmier and her co-worker, D.K., gave separate presentations to Mr. Hall, Mr. Anderson, the controller, and a customer service representative of the Company regarding their sales. Ms. Lehmier's presentation was based on her "account base – how well [she] did in 2015, how much [she] grew the accounts, growth opportunities, [and] threats." Ms. Lehmier's presentation was limited to an analysis of her sales in 2015 and did not address any plans for sales growth or travel to engage new customers in 2016. Immediately after her presentation, Mr. Anderson told Ms. Lehmier she "did a great job." Mr. Anderson also told the customer service representative that Ms. Lehmier had done "'a great job and [he was] proud of her.'" Based on Mr. Anderson's "praise[]" and the figures she showcased in the presentation, Ms. Lehmier believed she was performing her job well.

{¶9} Later that day, Mr. Hall and Mr. Anderson discussed Ms. Lehmier's failure to travel and lack of strategy to engage new customers. They decided to terminate Ms. Lehmier.

{¶10} On the Monday after the presentation, Mr. Hall and Ms. Lehmier discussed her presentation and job performance. While Ms. Lehmier felt she was doing a good job, Mr. Hall disagreed and told her she was not cut out for sales. In response to Mr. Hall's criticisms, Ms. Lehmier complained to him about the "offensive comments" Mr. Anderson made to her a few days earlier.

{¶11} The next day, Ms. Lehmier discussed Mr. Anderson's "offensive comments" with the Company's controller. Ms. Lehmier learned later that day that she was going to be fired on Friday. Ms. Lehmier, however, did not come to work on Friday and was terminated the following week.

{¶12} Ms. Lehmier filed a complaint against Western Reserve Chemical, asserting claims of gender discrimination, retaliation, intentional infliction of emotional distress, defamation, and hostile work environment. Following discovery, Western Reserve Chemical moved for summary judgment as to each of Ms. Lehmier's five causes of action. The parties fully briefed the summary judgment issues. The trial court granted summary judgment in favor of Western Reserve Chemical and against Ms. Lehmier as to all five causes action.

{¶13} Ms. Lehmier timely appeals from this judgment entry, asserting three assignments of error. Because she only raises challenges to her claims of gender discrimination and retaliation, this Court will limit its review accordingly.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ACTED AS TRIER OF FACT, AND CONTRARY TO [] CIV.R. 56(C) WHEN IT CONCLUDED THAT [WESTERN RESERVE CHEMICAL'S] REASON FOR [MS. LEHMIER'S] TERMINATION WAS BASED UPON A LEGITIMATE BUSINESS REASON.

{¶14} Ms. Lehmier argues that the trial court erred in granting summary judgment on her gender discrimination claim because she "offered no facts to show that [Western Reserve Chemical's] reasons for termination were pretextual." This Court disagrees.

{¶15} Appellate courts consider an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court uses the same standard that the trial court applies under Civ.R. 56(C), viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *See Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). Accordingly, this Court stands in the shoes of the trial court and conducts an independent review of the record.

{¶16} Summary judgment is proper under Civ.R. 56 when: (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the non-moving party. Civ.R. 56(C); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶17} Summary judgment consists of a burden-shifting framework. The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the non-moving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* at 292-293. Once the moving party satisfies this burden, the non-moving party has a reciprocal burden to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293. The non-moving party may not rest upon the mere

allegations or denials in his pleadings, but instead must submit evidence as outlined in Civ.R. 56(C). *Id.* at 293; Civ.R. 56(E).

{¶18} The trial court set forth the elements for a gender discrimination claim and the subsequent burden-shifting and pretext tests. In granting summary judgment on the gender discrimination claim in favor of Western Reserve Chemical, the trial court found the following: 1) Ms. Lehmier set forth a prima facie case for gender discrimination, 2) Western Reserve Chemical established a legitimate business reason for terminating Ms. Lehmier's employment, and 3) Ms. Lehmier failed to demonstrate that Western Reserve Chemical's basis for termination was pretext.

{¶19} Ms. Lehmier does not challenge the gender discrimination, burden-shifting, and pretext case law set forth and relied upon by the trial court. Instead, Ms. Lehmier only contests the trial court's conclusion that she failed to present evidence that Western Reserve Chemical's legitimate business reason for terminating her employment was pretext.

{¶20} When an employee establishes a prima facie case of gender discrimination, the burden shifts to the employer to set forth a legitimate, nondiscriminatory reason for the discharge. *Fox v. Lorain Cty.*, 9th Dist. Lorain No. 07CA009134, 2007-Ohio-6143, ¶ 10. The employer's burden is simply one of production. *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App.3d 663, 667 (9th Dist.1990). If the employer satisfies its burden of production, the employee then must present evidence that the employer's proffered nondiscriminatory reason was a mere pretext for unlawful discrimination. *Fox* at ¶ 10. "'To establish such pretext, a plaintiff must show either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge.'" *Jones v. MTD Consumer Group, Inc.*, 9th Dist. Medina No. 13CA0093-M, 2015-

Ohio-1878, ¶ 27, quoting *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir.2008). "The ultimate burden of persuasion to demonstrate discrimination remains with the [employee]." *Dunn v. GOJO Industries*, 9th Dist. Summit No. 28392, 2017-Ohio-7230, ¶ 41.

**{¶21}** Ms. Lehmier opposed Western Reserve Chemical's legitimate business reason by arguing that "the reason proffered by [Western Reserve Chemical] for the termination [was] not factual, and therefore pretextual." This approach amounts to an attack on the credibility of the employer's proffered reason. *See Dunn* at ¶ 17, quoting *Smith v. Dept. of Pub. Safety*, 10th Dist. Franklin No. 12AP-1073, 2013-Ohio-4210, ¶ 78. The employee has the burden of proving the employer's reason was false and that discrimination was the real reason for the discharge. *See Lindsay v. Children's Hosp. Med. Ctr. of Akron*, 9th Dist. Summit No. 24114, 2009-Ohio-1216, ¶ 14, quoting *Bennett v. Roadway Express, Inc.*, 9th Dist. Summit No. 20317, 2001 Ohio App. LEXIS 3394, *28-29 (Aug. 1, 2001), quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("'[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.'").

**{¶22}** To overcome summary judgment on the issue of pretext, the employee cannot simply deny the facts underlying the employer's decision, but instead must put forth "evidence creating a material dispute as to the employer's honest belief in its proffered legitimate, nondiscriminatory reason." *Wigglesworth v. Mettler Toledo Internatl., Inc.*, 10th Dist. Franklin No. 09AP-411, 2010-Ohio-1019, ¶ 19. *See Dunn* at ¶ 17. To exhibit an honest belief, "'the employer must establish its reasonable reliance on particularized facts that were before it at the time it made the adverse employment decision.'" *Dunn* at ¶ 18, quoting *Dept. of Pub. Safety* at ¶ 79, citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998). "'Mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for

denial of summary judgment.'" *Dunnigan v. City of Lorain*, 9th Dist. Lorain No. 02CA008010, 2002-Ohio-5548, ¶ 14, quoting *Carney v. Cleveland Hts.-Univ. Hts. City School Dist.*, 143 Ohio App.3d 415, 429 (8th Dist.2001).

{¶23} Mr. Hall and Mr. Anderson terminated Ms. Lehmier's employment because she "fail[ed] to perform the tasks required for her job," namely she "stopped trying to travel" to her assigned territories outside of Ohio and "demonstrated an inability to engage existing customers and develop new ones." Mr. Hall and Mr. Anderson made the termination decision following Ms. Lehmier's presentation to them on February 12, 2016.

{¶24} Mr. Hall and Mr. Anderson both were aware of Ms. Lehmier's struggles with meeting new customers in her territories. Ms. Lehmier raised her concerns about Mr. Hall's demeanor and her inability to secure meetings with potential new customers to Mr. Anderson in October 2015 at a dinner meeting, and again in February 2016 at a meeting in his office, the day before her presentation.

{¶25} As her direct supervisor, Mr. Hall would meet monthly with Ms. Lehmier and review her call sheets to see who she had met with and how many customer trips she made. In September or October of 2015, Mr. Hall "could see a pattern of [Ms. Lehmier's] inability to schedule trips starting to develop." Ms. Lehmier would "get upset" when he tried to address her job "responsibility of analyzing the market to determine whether there were other customers that she could call on in the plastics, adhesives, sealants and coatings area."

{¶26} Mr. Hall testified that "[Ms. Lehmier] probably made somewhere between five to seven * * * long distance trips" during her employment. Despite those long distance trips in the beginning of her employment, Mr. Hall averred that "[Ms. Lehmier] did not schedule a single out[-]of[-]state trip during the final two to three months of her employment." Accordingly, it

became "clear" to both Mr. Hall and Mr. Anderson that by the end of 2015 "[Ms.] Lehmier had more or less stopped trying to travel and getting in to see customers" for "face[-]to[-]face customer contact."

{¶27} Mr. Hall and Mr. Anderson were "review[ing Ms. Lehmier's] performance on an ongoing basis, month over month [and they] were very familiar with the circumstances." Ms. Lehmier's presentation in February 2016 demonstrated to Mr. Hall and Mr. Anderson that she had "no clear plan going forward to get on the road to develop existing customers and [to] create new [customers]." Ms. Lehmier conceded that her presentation did not contain any projections for 2016.

{¶28} According to the customer service representative, prior to the presentation, Mr. Anderson commented to her that "it was going to be a difficult day for [Ms. Lehmier]." When she asked "why," Mr. Anderson responded that "he wasn't planning on firing her, but that she is going to find out that she is not cut out to be a salesman." However, Mr. Anderson went on to say that "he 'might [be] full of sh** if she proves me wrong.'" Immediately following the presentation, Mr. Anderson told the customer service representative "'I guess I'm full of sh**. She did a great job and I'm proud of her.'" Additionally, at the conclusion of the presentation, Mr. Anderson told Ms. Lehmier that she "did a great job."

{¶29} However, the following Monday Mr. Hall met with Ms. Lehmier and "berat[ed her] on how horrible [she] was at sales and that [she] should take a good hard look at [her]self and come to terms with the fact that not everyone is cut out for sales." Mr. Hall told her "all the things that were wrong with [her] as a salesperson," including her lack of travel out-of-state. Ms. Lehmier "shut down" and "let him go" "firing negative criticism" at her. Ms. Lehmier was

"shock[ed]" by Mr. Hall's criticisms in light of Mr. Anderson's "praise[]" of her presentation and performance the previous Friday.

{¶30} Ms. Lehmier argued that she never stopped traveling to meet customers and, in fact, was terminated upon her return from a customer meeting. Ms. Lehmier submitted her calendars to show that she was actively traveling to meet clients in December 2015 and January and February 2016. Ms. Lehmier, however, misconstrues the scope of the "travel" upon which Mr. Hall and Mr. Anderson based their decision to terminate her. Mr. Hall and Mr. Anderson were concerned with Ms. Lehmier's failure to travel out-of-state to the "massive territor[ies]" assigned to her which were "ripe" with new client potential, and not her travel within Ohio to meet new and existing customers. Ms. Lehmier's calendars for these three months only reflected travel to customers located within "northeast Ohio." Ms. Lehmier failed to provide any evidence that she traveled out-of-state to meet with existing or potential customers during this three-month period.

{¶31} Ms. Lehmier argues that her unsent email should not be viewed as a "confession" that she was not performing her job duties. The unsent email goes to Ms. Lehmier's beliefs or state of mind at the end of January 2016. The email was never sent to Mr. Anderson. Accordingly, the contents of Ms. Lehmier's email were not part of the particularized facts upon which Western Reserve Chemical reasonably relied upon when it made its decision to terminate Ms. Lehmier. Therefore, Western Reserve Chemical cannot rely upon, nor will this Court consider, Ms. Lehmier's unsent email to support Western Reserve Chemical's honest belief in its proffered legitimate business reason.

{¶32} Ms. Lehmier also challenged Mr. Hall and Mr. Anderson's decision to terminate her because she contended that she was performing her job well, based upon the sales figures she

produced at her presentation and because she had added new accounts, such as Akron Dispersion, and was in the process of arranging a meeting with a potential customer, American Phoenix. However, Ms. Lehmier's subjective evaluation of her own performance is not the relevant inquiry. *See Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980). "It is the perception of the decision maker which is relevant." *Id.*

{¶33} Both Mr. Anderson and Mr. Hall were the decision makers in the termination of Ms. Lehmier. Their contradictory statements about Ms. Lehmier's performance are relevant to refute their honest belief in their proffered legitimate, nondiscriminatory reason for terminating Ms. Lehmier. While Ms. Lehmier did not present evidence that she was traveling out-of-state, she did present evidence calling into question whether her job performance was the reason for her termination. Viewing this evidence in the light most favorable to Ms. Lehmier, there remains a genuine issue of material fact as to whether Western Reserve Chemical's proffered reason for her termination had a basis in fact.

{¶34} However, our analysis does not stop here. Ms. Lehmier must also put forth evidence creating a genuine issue of material fact that the true reason for her termination was because of her gender. *See Williams v. City of Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 14, quoting *St. Mary's*, 509 U.S. at 515 (pretext requires that the basis for termination be false and discrimination was the real reason). Despite the fact that this is a gender discrimination claim, Ms. Lehmier's pretext argument is not that she was fired for being a woman, but that Western Reserve implemented a discriminatory travel policy and then terminated her employment when she "fail[ed] to abide by" that policy.[1]

---

[1] Ms. Lehmier recognizes that the fact that her termination took place after she complained about Mr. Anderson's "offensive comments" applies to her retaliation claim and not to her gender discrimination claim.

{¶35} The travel policy implemented on January 1, 2016 established a $60 per diem for food and beverage and designated the use of two hotel chains. Ms. Lehmier takes no issue with the per diem rate, only the limitation on the hotel chains. Ms. Lehmier claimed the travel policy was discriminatory based on gender because it required her to use two hotel chains that put her "safety[] at risk where [her] customers were."

{¶36} Ms. Lehmier failed to explain how a policy that was instituted on January 1, 2016 played any role in her lack of out-of-state travel for the previous month. To the extent that Ms. Lehmier suggested Western Reserve Chemical implemented the travel policy to sabotage her travel efforts in January and February 2016, she offered no evidence that the two designated hotel chains were "unsafe for her" as a woman or that, even if they were, Western Reserve Chemical had knowledge of that fact when it implemented the travel policy. Indeed, her own attorney repeatedly framed his questions regarding the travel policy and the issue of hotel safety as, "Whether or not it's true or not, in [Ms. Lehmier's] mind she felt safety was an issue, correct?" Ms. Lehmier has only offered conjecture in support of this argument. *See Dunnigan*, 2002-Ohio-5548, at ¶ 14, quoting *Carney*, 143 Ohio App.3d at 429.

{¶37} Additionally, Ms. Lehmier argued that the travel policy was discriminatory based on gender because it "applied to [her] and [her] alone." Relying on calendars and the Company's credit card statements, Ms. Lehmier noted that D.K., the other male account manager, did not use the designated hotel chains.[2] According to Mr. Hall, D.K. had complained about the travel policy and received an exception to use a different hotel chain as necessary. Mr. Hall acknowledged that Ms. Lehmier "complained bitterly" about the travel policy, because she

---

[2] The credit card statements reflect that D.K. split his travel between the designated hotel chains and another hotel chain.

felt the hotel chains were "unsafe" and "nasty." In response to Ms. Lehmier's complaints, Mr. Hall told her that "[i]f [she couldn't] find stuff that suit[ed her] needs in any particular market, [she could] default to what works." Ms. Lehmier testified that she did not feel that Western Reserve Chemical would support her going to a different hotel if her safety was at risk. However, Ms. Lehmier conceded that she never asked to stay at a different hotel chain because she did not travel after the policy went into effect. Again, Ms. Lehmier has only provided conjecture and no evidence that the travel policy only applied to her, a female employee. *See Dunnigan* at ¶ 14, quoting *Carney* at 429. Viewing the evidence in the light most favorable to Ms. Lehmier, she has failed to put forth evidence creating a genuine issue of material fact that she was terminated based upon her gender.

{¶38} Based on the foregoing, Ms. Lehmier has failed to create a genuine issue of material fact that Western Reserve Chemical's proffered reason for her termination was pretext. Without evidence of pretext, this Court concludes that the trial court did not err in granting Western Reserve Chemical summary judgment on Ms. Lehmier's gender discrimination claim.

{¶39} Ms. Lehmier's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED BY NOT CONSIDERING [MS. LEHMIER'S] CLAIMS FOR DISCRIMINATORY TREATMENT DURING THE COURSE OF HER EMPLOYMENT WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF [WESTERN RESERVE CHEMICAL].

{¶40} In her second assignment of error, Ms. Lehmier argues that the trial court erred in granting summary judgment on her gender discrimination claim because it only considered her termination and not her allegations of other discriminatory acts. This Court disagrees.

{¶41} In her brief in opposition to the summary judgment motion, Ms. Lehmier argued that Western Reserve Chemical's motion for summary judgment on the gender discrimination

claim only addressed one alleged act of gender discrimination: Ms. Lehmier's termination. Ms. Lehmier argued that summary judgment was not appropriate because she had pled other discriminatory acts in her gender discrimination claim that were not addressed in Western Reserve Chemical's summary judgment motion.

{¶42} On appeal, Ms. Lehmier relies on R.C. 4112.02(A) to argue that the other discriminatory acts were "issue[s] of workplace discrimination" that affected her "terms, conditions, or privileges of employment." In essence, Ms. Lehmier is arguing that the other discriminatory acts did not culminate in her termination, but instead generated other adverse employment actions related to the terms, conditions, or privileges of her employment. Ms. Lehmier's complaint does not support this argument.

{¶43} While the complaint listed these other discriminatory acts in the "FACTS COMMON TO ALL CLAIMS" section, the gender discrimination claim in count one of the complaint only identified one manner in which the terms, conditions, or privileges of employment were affected, and that was her discharge. (Emphasis sic.) While Ms. Lehmier used the phrase "other privileges and conditions of employment" in this, and each of the other counts, she did so only in the context of damages:

> As a direct and proximate result of [Western Reserve Chemical's] conduct, Ms. Lehmier has suffered and will continue to suffer economic and non-economic injuries, including but not limited to pain and suffering and the loss of salary, benefits and other privileges and conditions of employment, for which [Western Reserve Chemical is] liable.

The reference to "loss of salary, benefits and other privileges and conditions of employment" addresses Ms. Lehmier's damages arising from her termination of employment, and not a separate adverse employment action as contemplated by R.C. 4112.02(A). There are no facts or allegations in the complaint that these other discriminatory acts had any other effect except

termination. Because Ms. Lehmier only pled termination as the manner in which the terms, conditions, or privileges of employment was affected, it was proper for Western Reserve Chemical to move for summary judgment and the trial court to decide gender discrimination based upon termination and not the other alleged discriminatory acts.

{¶44} Ms. Lehmier's second assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ACTED [] AS TRIER OF FACT, AND CONTRARY TO [] CIV.R. 56(C) WHEN IT CONCLUDED THAT [MS. LEHMIER] DID NOT ESTABLISH A CLAIM FOR RETALIATION.

{¶45} Ms. Lehmier contends that the trial court erred when it granted summary judgment in favor of Western Reserve Chemical on her retaliation claim because there were genuine issues of material fact regarding pretext. This Court agrees that the trial court erred in granting summary judgment on the retaliation claim, but for a different reason.

{¶46} "A party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus. Granting summary judgment on a basis not raised deprives the party opposing summary judgment of any opportunity to respond. *See Butler v. Harper*, 9th Dist. Summit No. 21051, 2002-Ohio-5029, ¶ 28, citing *DePugh v. Sladoje*, 111 Ohio App.3d 675, 681-682 (2d Dist.1996). This Court has held that it is error for a trial court to award summary judgment on a ground not specified in the motion for summary judgment. *See Butler* at ¶ 28; *Albrecht v. Marinas Internatl. Consol., LP*, 9th Dist. Summit No. 25246, 2010-Ohio-5732, ¶ 17-18. *See also Smith v. Ray Esser & Sons, Inc.*, 9th Dist. Lorain No. 10CA009798, 2011-Ohio-1529, ¶ 14, quoting *State ex rel. Sawicki v. Court of Common Pleas of Lucas Cty.*, 121 Ohio St.3d 507, 2009-Ohio-1523, ¶ 27.

**{¶47}** As to Ms. Lehmier's claim for retaliation, Western Reserve Chemical moved for summary judgment based upon one argument: there was "no causal connection between the protected activity and the adverse action." This is one of the elements that an employee must demonstrate to establish a prima facie case of retaliation. *See Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 13.

**{¶48}** While the trial court set forth the case law, the facts, and the arguments of the parties regarding the causal connection between the protected activity and the adverse action, it did not make a determination on this element. Nor did the trial court affirmatively find that Ms. Lehmier established a prima facie case of retaliation that would trigger the burden shifting analysis of legitimate business reason and pretext. *See Greer-Burger* at ¶ 14. Instead, the trial court stated that

> [a]ssuming arguendo that [Ms. Lehmier] demonstrated a prima facie case of retaliation based upon her discharge, [Western Reserve Chemical has] supplied legitimate business reasons for terminating her. As such, [Ms. Lehmier] has the ultimate burden of providing evidence that [Western Reserve Chemical's] proffered legitimate reasons were pretextual. * * * [Ms. Lehmier] cannot show pretext.

(Internal citation omitted.) Contrary to the trial court's judgment, Western Reserve Chemical never asserted an argument under the burden shifting analysis of a legitimate business reason as to the retaliation claim. Western Reserve Chemical asserted that argument only in the gender discrimination claim. Accordingly, the trial court incorrectly applied Western Reserve Chemical's legitimate business reason argument in the retaliation claim and improperly awarded summary judgment based on an argument that was not presented by Western Reserve Chemical.

**{¶49}** While this Court conducts a de novo review in a summary judgment context, we refrain from addressing Western Reserve Chemical's argument that there was "no causal connection between the protected activity and the adverse action" because the trial court did not

decide that issue. This Court has repeatedly held that issues raised in summary judgment motions, but not considered by the trial court will not be decided by this Court in the first instance. *See Skidmore v. Natl. Bronze & Metals (Ohio), Inc.*, 9th Dist. Lorain No. 12CA010328, 2014-Ohio-4423, ¶ 16; *Neura v. Goodwill Industries*, 9th Dist. Medina No. 11CA0052-M, 2012-Ohio-2351, ¶ 19; *Guappone v. Enviro-Cote, Inc.*, 9th Dist. Summit No. 24718, 2009-Ohio-5540, ¶ 13. To consider summary judgment arguments in the first instance on appeal "effectively depriv[es] the non-prevailing party of appellate review." *Guappone* at ¶ 13.

{¶50} Ms. Lehmier's third assignment of error is sustained.

## III.

{¶51} Ms. Lehmier's first and second assignments of error are overruled and her third assignment of error is sustained. The judgment of the Summit County Common Pleas Court is affirmed in part and reversed in part.

Judgment affirmed in part
and reversed in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

STEVEN W. MASTRANTONIO, Attorney at Law, for Appellant.

HAMILTON DESAUSSURE, JR., Attorney at Law, for Appellee.