[Cite as *Pilato v. Nordonia Hills City Schools Bd. of Edn.*, 2019-Ohio-3085.]

STATE OF OHIO               )                    IN THE COURT OF APPEALS
                            )ss:                 NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT            )

PATRICIA PILATO                                  C.A. No.      29243

        Appellant

        v.                                       APPEAL FROM JUDGMENT
                                                 ENTERED IN THE
BOARD OF EDUCATION OF THE                        COURT OF COMMON PLEAS
NORDONIA HILLS CITY SCHOOL                       COUNTY OF SUMMIT, OHIO
DISTRICT, ET AL.                                 CASE No.      CV-2017-12-5287

        Appellees

DECISION AND JOURNAL ENTRY

Dated: July 31, 2019

HENSAL, Judge.

{¶1}    Patricia Pilato appeals from the decision of the Summit County Court of Common Pleas, granting summary judgment in favor of the Board of Education of the Nordonia Hills City Schools and the business director for the school district, Matt Gaugler. For the reasons that follow, this Court affirms.

I.

{¶2}    Ms. Pilato worked in the cafeteria at Nordonia High School for over 20 years, eventually becoming the manager. In this position, Ms. Pilato was a member of the Ohio Association of Public School Employees union. Throughout her employment, Ms. Pilato received positive performance evaluations and, up until the facts giving rise to this case, had never received disciplinary action. Relevantly, part of Ms. Pilato's job responsibilities included ordering food from Gordon Food Service ("GFS"). To do this, Ms. Pilato would log on to the

GFS website with her own username and password. Other than her immediate supervisor, Sue Petonic (who had her own username and password), no one else at the high school had access to GFS's online ordering system.

{¶3} In May 2017, Ms. Pilato requested time off to have knee replacement surgery, which would require her to be off work during the last two weeks of the school year. While Ms. Pilato was on leave, a GFS order that Ms. Petonic placed did not arrive. After contacting GFS, Ms. Petonic learned that someone using Ms. Pilato's username and password on a non-school computer had cancelled the order. Although Ms. Pilato denied cancelling the order, Ms. Petonic and Mr. Gaugler did not believe her, in part because her "story changed multiple times[.]" Ms. Petonic also learned that, while Ms. Pilato was on leave, Ms. Pilato was logging into the online payroll system and correcting other employees' time. According to Ms. Pilato, Ms. Petonic instructed her to continue working while on leave. According to Ms. Petonic, she instructed Ms. Pilato not to work while on leave. Further, during her investigation of the cancelled food order, Ms. Petonic spoke with other cafeteria employees who alleged that Ms. Pilato had bullied and harassed them.

{¶4} Mr. Gaugler ultimately decided that Ms. Pilato should be removed from her position as manager, and that – given the allegations of bullying – she should not return to work at the high school. He, therefore, provided Ms. Pilato with three options: (1) complete an Employee Assistance Program and take a non-management cafeteria position at one of the other schools within the district; (2) resign, thereby allowing her to retain the district's contributions to her retirement benefits; or (3) be terminated for insubordination. After speaking with a union representative, Ms. Pilato resigned.

{¶5} Ms. Pilato then sued the school district and Mr. Gaugler (collectively, "Defendants"), asserting three causes of action against them: (1) disparate-impact disability discrimination; (2) disability discrimination for failure to provide reasonable accommodation; and (3) retaliation. She also asserted a claim for aiding and abetting discrimination against Mr. Gaugler only.

{¶6} After a period of discovery, Defendants moved for summary judgment on all of Ms. Pilato's claims. In doing so, they argued that Ms. Pilato could not establish a prima facie case of disability discrimination because she was not disabled, never requested an accommodation, and did not suffer an adverse employment action because she voluntarily resigned. Defendants further argued that, even if Ms. Pilato could establish a prima facie case, they had a legitimate, non-discriminatory reason for their actions: Ms. Pilato cancelled the GFS food order, requiring Ms. Petonic to go to the physical GFS store to buy the necessary food items, which they "needed * * * immediately."

{¶7} Ms. Pilato responded in opposition. She argued that she was disabled because she had knee pain prior to her knee replacement surgery, which required her to wear a knee brace. Without the knee brace, she asserted, she would not have been able to work. She also argued that she was disabled during her recovery from surgery because she could not walk without the assistance of a walker or cane, and that – even when she could walk unassisted several weeks after her surgery – she did so slowly and with a limp. Regarding an accommodation, Ms. Pilato argued that she requested an accommodation by virtue of her request for leave while recovering from surgery, and that she was denied a reasonable accommodation because Ms. Petonic instructed her to continue working while on leave. She further argued that she suffered an

adverse employment action because she faced a demotion, and was constructively discharged by being forced to resign.

{¶8} With respect to Defendants' assertion that they fired her due to the cancelled GFS order, Ms. Pilato maintained that she did not cancel the order, and asserted that Ms. Petonic "had motivation to conceal the fact that she told [her] to continue working while on disability leave and therefore concoct alternative reasons for why [she] would be working while on leave." She also argued that the cancelled order did not result in any harm because Ms. Petonic was able to go to the physical GFS store and purchase the necessary food items to serve that day. She further argued that the harsh punishment was not justified given her history of exemplary performance. She, therefore, concluded that "it would seem as if something other than a legitimate business reason motivated the employment actions taken against her."

{¶9} The trial court granted summary judgment in favor of Defendants, holding that Ms. Pilato was not disabled as defined under Revised Code Section 4112.01(A)(13), and that no evidence indicated that Defendants regarded her as such. It then made several alternative holdings, including that Ms. Pilato: (1) did not suffer an adverse employment action because she voluntarily resigned; (2) never requested an accommodation (and even if her request for leave to undergo knee surgery qualified as a request for an accommodation, she was granted leave); and (3) failed to meet her burden of demonstrating that Defendants' actions were a pretext for disability discrimination. The trial court further held that, since Ms. Pilato's disability-discrimination claims failed, her claim against Mr. Gaugler for aiding and abetting likewise failed. She now appeals that decision, raising five assignments of error for our review. To facilitate our review, we have combined Ms. Pilato's assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DISTRICT AND GAUGLER ON PILATO'S CLAIMS OF DISABILITY DISCRIMINATION FOR FAILURE TO PROVIDE REASONABLE ACCOMMODATION AND FOR RETALIATION WHEN IT HELD THAT PILATO WAS NOT DISABLED.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DISTRICT AND GAUGLER ON PILATO'S CLAIM OF DISABILITY DISCRIMINATION FOR FAILURE TO PROVIDE A REASONABLE ACCOMMODATION WHEN IT HELD THAT PILATO FAILED TO REQUEST A REASONABLE ACCOMMODATION AND/OR THAT THE DISTRICT AND GAUGLER PROVIDED THE REQUESTED REASONABLE ACCOMMODATION.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DISTRICT AND GAUGLER ON PILATO'S CLAIM OF DISABILITY DISCRIMINATION – RETALIATION WHEN IT HELD THAT PILATO SUFFERED NO ADVERSE EMPLOYMENT ACTION.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DISTRICT AND GAUGLER ON PILATO'S CLAIM OF DISABILITY DISCRIMINATION – RETALIATION WHEN IT HELD THAT PILATO FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE REASONS FOR HER FORCED RESIGNATION WERE PRETEXT FOR DISCRIMINATION.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF GAUGLER ON PILATO'S CLAIM FOR AIDING AND ABETTING DISCRIMINATION BECAUSE THE CLAIMS OF DISABILITY DISCRIMINATION FOR FAILURE TO PROVIDE REASONABLE ACCOMMODATION AND RETALIATION DO NOT FAIL AS A MATTER OF LAW.

{¶10} In her assignments of error, Ms. Pilato argues that the trial court erred by granting summary judgment in favor of Defendants, determining that she: (1) was not disabled as defined under Section 4112.01(A)(13); (2) was not denied a reasonable accommodation; (3) did not suffer an adverse employment action; and (4) did not demonstrate that a genuine issue of material fact remained as to whether Defendants' proffered legitimate, nondiscriminatory reason for their action was a pretext for discrimination. Ms. Pilato also argues that, because the trial court granted summary judgment to Mr. Gaugler on the aiding-and-abetting claim based upon its determination that her disability-discrimination claims failed, its reasoning was erroneous, and its decision must be reversed.

{¶11} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civil Rule 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶12} The party moving for summary judgment bears the initial burden of demonstrating the absence of genuine issues of material facts concerning the essential elements of the non-moving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civil Rule 56(C). *Id*. at 292-293. If the moving party satisfies this burden, then the non-moving party has the reciprocal burden to demonstrate a genuine issue for trial remains. *Id.* at 293. The non-moving party may not rest upon the mere allegations or denials in her

pleadings, but must point to or submit evidence of the type specified in Civil Rule 56(C). *Id.*; Civ.R. 56(E).

{¶13} To establish a prima facie case of disability discrimination, a plaintiff must prove that she: (1) was disabled; (2) suffered an adverse employment action based, at least in part, on that disability; and (3) could safely and substantially perform the essential functions of the job. *See Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571 (1998). If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its action. *Tripp v. Beverly Ents.–Ohio, Inc.*, 9th Dist. Summit No. 21506, 2003-Ohio-6821, ¶ 28. "The employer's burden regarding the legitimate[,] nondiscriminat[ory] rationale is one of production only." *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App.3d 663, 667 (9th Dist.1990). Then, the burden shifts back to the employee to demonstrate that the proffered reason is a pretext for discrimination. *Tripp* at ¶ 28. Because other issues are dispositive of this appeal, we will assume – without deciding – that Ms. Pilato was disabled, and that she suffered an adverse employment action. Further, we note that there was no dispute below that Ms. Pilato could safely and substantially perform the essential functions of her job.

{¶14} Regarding a claim for failure to accommodate:

> a prima facie case involves a showing that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position (with or without reasonable accommodation); (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. The burden is placed on the plaintiff to propose an accommodation that is objectively reasonable.

*Stewart v. Bear Mgt., Inc.*, 5th Dist. Stark No. 2017CA00025, 2017-Ohio-7895, ¶ 21, quoting *Barber v. Chestnut Land Co.*, 7th Dist. Mahoning No. 15 MA 39, 2016-Ohio-2926, ¶ 72.

**{¶15}** Relevantly, "[a]n employer may obtain summary judgment in a discrimination case by either demonstrating that the plaintiff's proffered evidence fails to establish a prima facie case, or by presenting a legitimate, nondiscriminatory explanation for the adverse employment action about which the plaintiff fails to create a factual dispute that the explanation is a pretext for discrimination." *Dunn v. GOJO Industries*, 9th Dist. Summit No. 28392, 2017-Ohio-7230, ¶ 13, quoting *Williams v. Time Warner Cable*, 9th Dist. Wayne No. 18663, 1998 WL 332937, *2 (June 24, 1998). Here, Ms. Pilato argues that Defendants discriminated against her by forcing her to resign, and by failing to provide a reasonable accommodation. We will address her reasonable-accommodation argument first.

**{¶16}** As previously noted, the trial court determined that Ms. Pilato never requested an accommodation. It further determined that, if her request for leave to undergo knee surgery qualifies as a request for an accommodation, Defendants granted that request. On appeal, Ms. Pilato argues that her request for leave was a request for an accommodation, and that Defendants effectively denied it by requiring her to work, and by requiring her to address the cancelled-food-order issue while on leave. Assuming without deciding that her request for leave qualifies as a request for an accommodation, we agree with the trial court that no genuine issue of material fact remained regarding whether Ms. Pilato received that accommodation.

**{¶17}** Ms. Pilato testified that she met with Ms. Petonic the Friday before her surgery and told her she would need the last 10 days of the school year off work to undergo knee replacement surgery. According to Ms. Pilato, Ms. Petonic advised her to use her sick leave, which she did. In the same meeting, Ms. Pilato and Ms. Petonic discussed ideas for the next school year, including tentative menus and ways to increase participation in the high school's lunch program. The following Monday (the day before Ms. Pilato's surgery), Ms. Petonic

wished Ms. Pilato "[g]ood luck[,]" and Ms. Pilato indicated that they would talk sometime after her surgery.

{¶18} While Ms. Pilato testified at her deposition that Ms. Petonic instructed her to continue working while on leave (an assertion that Ms. Petonic denied), the record reveals that Ms. Pilato continued to work on her own accord. For example, the record includes emails and text messages authored by Ms. Pilato, indicating that she "was never told by [Ms. Petonic] or anyone else not to do [her] job[,]" that she "just assumed" she would continue working, and that she "did not think okaying times [in the online payroll system] was that big of a deal." She also indicated that she "d[idn't] have a problem helping * * * if needed," but acknowledged that she was specifically told not to submit a GFS order while on leave because Ms. Petonic and another cafeteria employee were "taking care of" it and "had it covered."

{¶19} While Ms. Pilato's deposition testimony contradicted her other statements contained in the record, it did not create a "genuine issue" of material fact, that is, one that presented "a sufficient disagreement to require submission to a jury[.]" *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). Rather, the evidence here was "so one-sided that [Defendants] must prevail as a matter of law[.]" *Id.*, quoting *Anderson* at 252; *see Deutsche Bank Natl. Trust Co. v. Doucet*, 10th Dist. Franklin No. 07AP-453, 2008-Ohio-589, ¶ 7 (describing a "genuine issue" as a "substantial or real issue of fact" that "can be maintained by substantial evidence."); *Privett v. QSL-Milford, L.L.C.*, 12th Dist. Clermont No. CA2013-04-025, 2013-Ohio-4129, ¶ 9 ("Not all disputes of fact create a genuine issue. Instead, a dispute of fact can be considered 'genuine' if it is supported by substantial evidence that exceeds the allegations in the complaint."). Further, to the extent that Ms. Pilato asserts that Defendants denied her request for an accommodation because they

required her to address the cancelled-food-order issue while on leave, she did not raise that issue below, and cannot do so for the first time on appeal. *Miller v. Miller*, 9th Dist. Summit No. 21770, 2004-Ohio-1989, ¶ 14.

**{¶20}** Regarding her claim for retaliation, after Defendants proffered a legitimate, nondiscriminatory reason for its actions (i.e., the cancelled food order), Ms. Pilato had the burden of demonstrating that the proffered reason was a pretext for discrimination. "To demonstrate pretext, 'the plaintiff must show one of the following: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the adverse employment action, or (3) that the employer's reasons were insufficient to motivate the adverse employment action.'" *Dunn*, 2017-Ohio-7230, at ¶ 15, quoting *Chiancone v. City of Akron*, 9th Dist. Summit No. 26596, 2014-Ohio-1500, ¶ 18. Ms. Pilato failed to meet this burden.

**{¶21}** In her response to Defendants' motion for summary judgment, Ms. Pilato asserted that she did not cancel the GFS order, and that – even if she did – the lack of resulting harm, coupled with her exemplary work history, did not justify her forced resignation. She further asserted that Ms. Petonic "had motivation to conceal the fact that she told [her] to continue working while on disability leave and therefore to concoct alternative reasons for why [she] would be working while on leave." She concluded that "it would seem as if something other than a legitimate business reason motivated the employment actions taken against her."

**{¶22}** Despite her denial, the record contains no genuine issue of material fact as to whether Ms. Pilato cancelled the GFS order: she admitted to being logged onto the GFS website on the night the order was cancelled, and acknowledged that no one else knew her login credentials. Further, Defendants presented evidence from GFS, which indicated that someone using Ms. Pilato's login credentials cancelled the food order. Again, the evidence presented was

so one-sided that no "genuine issue" existed. *See Turner*, 67 Ohio St.3d 337, at 340; *Interstate Properties v. Prasanna, Inc.*, 9th Dist. Summit Nos. 22734, 22757, 2006-Ohio-2686, ¶ 30 ("In determining whether there is a genuine issue of material fact, a court must inquire whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."), quoting *Wall v. Firelands Radiology, Inc.*, 106 Ohio App.3d 313, 322-323 (6th Dist.1995).

{¶23} Additionally, as the trial court noted, the lack of harm (i.e., the fact that Ms. Petonic was able to go to the physical GFS store and purchase the necessary food items) and Ms. Pilato's history of exemplary job performance does not, by itself, establish that Defendants discriminated against her on the basis of her alleged disability. Other than Ms. Pilato's speculation, nothing in the record indicates that Defendants' actions were motivated by anything other than a legitimate, nondiscriminatory reason: the cancellation of the GFS food order. In fact, the record indicates that – prior to the cancellation of the food order – Ms. Petonic expected Ms. Pilato to return to work the following school year, and had already begun planning new menus with her, as well as discussing strategies to increase participation in the lunch program. To the extent that Ms. Pilato asserts that Ms. Petonic was motivated to conceal the fact that she allegedly told Ms. Pilato to continue working while on leave, Ms. Pilato failed to point to any evidence – aside from her own testimony that, as discussed above, contradicted her other statements contained in the record – that supported her position in that regard. *See Barber*, 2016-Ohio-2926, at ¶ 68 (holding that speculation offered to show pretext is insufficient to defeat summary judgment). Defendants proffered a legitimate, nondiscriminatory reason for their actions, and Ms. Pilato failed to meet her reciprocal burden of establishing a genuine issue of material fact as to whether that reason was a pretext for disability discrimination. Accordingly,

the trial court did not err by granting summary judgment in favor of Defendants, nor did the trial court err by granting summary judgment in favor of Mr. Gaugler on Ms. Pilato's claim for aiding and abetting discrimination.

{¶24} In light of the foregoing, Ms. Pilato's assignments of error are overruled.

III.

{¶25} Ms. Pilato's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER L. HENSAL
FOR THE COURT

CALLAHAN, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

SHAWN A. ROMER, Attorney at Law, for Appellant.

CHRISTIAN M. WILLIAMS and TARYN A. WEISS, Attorneys at Law, for Appellees.